IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

CAROLYN S. COLLINS                                      PLAINTIFF

vs.                          **3:06CV00161WRW**

MICHAEL J. ASTRUE,                                DEFENDANT
Commissioner, Social Security Administration[1]

## **ORDER**

Plaintiff, Carolyn Collins, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of the Social Security Administration denying her claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act), and Supplemental Security Income (SSI) benefits under Title XVI of the Act. Both parties have submitted briefs, and the case is ready for disposition.

**I. Procedural Background**

Collins filed applications for DIB and SSI benefits on August 6, 2003, alleging disability beginning September 30, 2000.[2] Her claims were denied initially and upon reconsideration. Based on Collins's request, a hearing was conducted by the Administrative Law Judge (ALJ) on February 1, 2006, at which Collins, who was represented by counsel, and a vocational expert (VE) testified.[3] On June 29, 2006, the

---

[1]Michael J. Astrue was sworn in as Commissioner of the Social Security on February 12, 2007. He, therefore, is substituted for Jo Anne B. Barnhart under Fed. R. Civ. P. 25(d)(1).

[2]Tr. 52-54. In her application for SSI, Collins alleged disability beginning on July 18, 2001. Tr. 214.

[3]Tr. 221-248.

-1-

ALJ issued a decision denying Collins's claim for benefits.[4] The Appeals Council denied Collins's request for review, making it the final decision of the Commissioner.[5] It is from this decision that Collins seeks judicial review.

## II. Summary of Evidence in Record

Collins was born on December 27, 1959, and was 46 years old at the time of the hearing.[6] She has a ninth grade education.[7] She worked in quality control from 1988 to 2000.[8]

In September, 2000, Collins began seeing Dr. Thomas Rappette, a podiatrist, for a plantar fibroma.[9] An electromyogram (EMG) and nerve conduction report performed by Dr. Ta on November 3, 2000, showed a mild compressive neuropathy of the posterior tibial nerve at the left ankle, *i.e.*, a tarsal tunnel syndrome.[10] In December, 2000, Dr. Rappette reported in a physician's statement in connection with Collins's claim for short term disability from her employer that Collins had moderate limitation of functional capacity, and was capable of sedentary activity only.[11]

---

[4]Tr. 10-20.

[5]Tr. 4-6.

[6]Tr. 212.

[7]Tr. 81.

[8]Tr. 67.

[9]Tr. 141.

[10]Tr. 161.

[11]Tr. 141-142.

Collins continued to experience pain and in April, 2001, Collins underwent excision of the plantar fibroma.[12] The post-operative medical records from Dr. Rappette reveal that Collins continued to experience pain in her left heel after the surgery.[13] Dr. Rappette prescribed a number of pain medications, such as Vioxx, Vicodin, and Darvocet, to help with the pain.[14]

On July 13, 2001, Dr. Rappette noted that the MRI of Collins's right heel revealed medial ligament with thickening and inflammation. He stated that Collins was regenerating plantar fasciitis. He prescribed Vicodin and Lodine and directed Collins to stay off her foot as much as possible.[15]

In an August 10, 2001, note to Collins's employer, Dr Rappette noted that Collins was undergoing surgery for her stomach due to which she would be laid up for eight weeks. Pending the outcome of the stomach surgery, Collins would possibly be "scheduled for open heel spur resection with plantar fascial release to help resolve her heel pain."[16] Collins

> has been treated so far with multiple injections and orthotics which still give her severe heel pain. . . . At this current time, she is not able to return to work for standing or an ambulatory job. She does qualify for a full sit down job. Otherwise, [Collins] is unable to work at this time.[17]

Collins continued to report left heel pain.[18] She had additional surgery in April, 2002. Collins kept experiencing pain, even after the surgery. On May 21, 2002, Collins

---

[12] Tr. 140.

[13] Tr. 136-138.

[14] Tr. 136-137.

[15] Tr. 136.

[16] Tr. 135.

[17] *Id.*

[18] Tr. 131-34.

reported a lot of pain in the heel area.  Dr. Rappette put Collins on Lidocaine patches to numb the area a little so that she could begin to walk on it.[19]

Collins reported pain in her foot on a June 21, 2002, visit to Dr. Rappette and stated that she could not use the Lidocaine patches because they made her sick to her stomach.[20]  On an August 9, 2002, visit to Dr. Rappette, Collins reported continued pain.  Dr. Rappette recommended shock wave therapy.  Dr. Rappette noted that Collins had been through physical therapy, orthotics, and heel surgery, all without success.[21]

Collins was still in pain on her September 17, 2002, office visit.  Dr. Rappette noted that Collins had "some shooting pain in the toes, which indicates some recurrence of the tarsal tunnel."  He gave Collins Tuli cups for both feet and recommended a cortisone injection in to the tarsal tunnel on Collins' next office visit.  Dr. Rappette prescribed Darvocet for pain and Vioxx.[22]

Collins underwent extracorporeal shock wave therapy in the left heel on October 30, 2002.[23]  She continued to report pain in her left heel even after the treatment.[24]

On February 23, 2003, Collins underwent orthotripsey to her left heel.[25]  On her follow-up visit on April 1, 2003, Collins reported still having pain.  Dr. Rappette noted obvious anterior and lateral muscle weakness.[26]

---

[19]Tr. 129.

[20]Tr. 129.

[21]Tr. 128.

[22]*Id.*

[23]Tr. 126.

[24]Tr. 124, 125.

[25]Tr. 123.

[26]Tr. 118.

On May 12, 2003, Collins underwent an EMG and nerve conduction study of her lower left limb upon a referral from Dr. Rappette. Results were within normal limits without signs supporting a diagnosis of radiculopathy, plexopathy, or peripheral neuropathy.[27]

On a re-evaluation on May 13, 2003, Collins reported pain. Dr. Rappette suggested the possibility of doing sclerosing injections to see if that would resolve the pain problem. Collins agreed to do this, after being advised that an injection could cause permanent numbness to the area.[28]

Collins again reported pain on her June 12, 2003, reevaluation with Dr. Rappette. Dr. Rappette reported the following:

> She continued to have sharp pain into her left heel. She had undergone large amount of conservative care along with large amount of surgical care, but it has not relieved her painful condition. She had responded to the tarsal tunnel release, which is relieved from pain and discomfort on the bottom of her left foot but her heel medial side seems to continue to give her pain. She has undergone an open heel spur resection along with two ESWT shockwave treatments to her left heel, multiple steroid injections, physical therapy, orthotic management without any relief of symptoms. The tarsal tunnel symptoms have resolved, but her heel pain is still present. She also has sought a neurological consultation to Dr. Ta because we have detected a little bit of muscle weakness in her left leg. Dr. Ta states that there is no pathology on the EMG nerve conduction that supports the weakness. She has had a plantar fibroma removed with success. This no longer gives her any discomfort. The only constant pain she has [is] in the medial side of her foot. The EMG that did come back also supported the diagnosis of tarsal tunnel. The secondary EMG has supported that the surgery along with clinical exam, have removed the tarsal tunnel syndrome itself. The only other possible treatment option for her at this time would be alcohol sclerosing injections into the heel to possibly remove the neurological neuroma or neurological component of the heel pain. She is out of town. I did give her one injection, which did not make a difference, but she is unable to follow up on a weekly basis. I recommended that we do not continue this until she is able to followup through the proper treatment plan. I feel the success rate would be greatly reduced by her inability to return to the office. I also want her to seek a consult for . . . pain management and possible other treatment options for her discomfort. She has refused to seek treatment for this due to financial reason. She currently does not have

---

[27]Tr. 119-122.

[28]Tr. 117.

any insurance . . . I have her on anti-inflammatory at this point in time with Celebrex . . . I will not give her any orthotics any more until she seeks a pain consult. . . She is going to try [to] schedule time when she is able to come on a weekly basis for the sclerosing injections.[29]

On June 12, 2002, Dr. Rappette completed an attending physician's's statement for Collins's disability claim with her employer. He noted that Collins had been seeing him monthly since October 6, 2000. He indicated that Collins's condition had not changed and that she was ambulatory with pain. He stated that Collins had moderate limitation of functional capacity, and was capable of sedentary activity. He further stated that he was unsure if Collins would be able to return to work if there was no improvement in her condition.[30]

Collins moved to Arkansas, but returned to Illinois to see Dr. Rappette on October 7, 2003. She complained of pain all the time and Dr. Rappette found pain with palpation. Dr. Rappette continued Collins's restrictions, stating that the only thing he would not say was that she was unable to sit. He gave Collins a prescription for Vicodin, but recommended again that she seek treatment locally and from a pain specialist.[31]

At Social Security's request, Collins was examined by Dr. Rommel L. Childress on October 23, 2003.[32] Dr. Childress diagnosed Collins with a history of chronic tendinitis and fasciitis with multiple surgeries and chronic pain. He stated that Collins needed major rehabilitation regarding her foot. He believed that Collins needed to "come off of" the narcotic control substance and be given therapy in an effort to get her to do heel/toe walking. "She may not be a candidate for activities that require major standing or walking, but [he] would think she would be an excellent candidate from [sic] some type of vocational

---

[29]Tr. 114.

[30]Tr. 115-116.

[31]Tr. 114.

[32]Tr. 143-144.

rehab."[33]

Plaintiff was seen at the White River Rural Health Clinic (WRRH) on March 1, 2004, complaining of left foot pain and pain in her low back. Dr. Terry Hunt assessed Collins with gastroesophageal reflux disease (GERD) and surgical foot. Collins was given Protonix samples and Vicodin.[34]

Collins returned to WRRH on May 20, 2004, requesting a "nerve pill" and a refill on her Vicodin. She was assessed with anxiety and foot pain and was prescribed Xanax, Lexapro, and Vicodin.[35]

Collins returned to WRRH on July 26, 2004, needing refills on her medications and complaining of anxiety attacks. She was assessed with panic attack and foot pain, and was prescribed Nexium, Xanax, and Vicodin. [36]

On September 20, 2004, Collins was seen at WRRH with a head cold. Dr. Hunt assessed Collins with anxiety disorder, food pain, and GERD. She was prescribed Xanax and Vicodin.[37] Collins received refills of Xanax and Vicodin on November 15, 2004, and was diagnosed with foot pain and anxiety.[38] On February 18, 2005, Collins went to WRRH where she was assessed with foot pain and anxiety disorder and was given refills of Vicodin and Xanax.[39]

---

[33]Tr. 144.

[34]Tr. 156.

[35]Tr. 167.

[36]Tr. 166.

[37]Tr. 165.

[38]Tr. 164.

[39]Tr. 162.

On July 22, 2005, Collins was admitted to the emergency room at Arkansas Methodist Hospital in Paragould for convulsions after having drunk about 15 cans of beer. She was evaluated and treated for her convulsions in ICU and had no more convulsions. She was discharged the next day.[40]

Collins went to WRRH on November 18, 2005, needing refills on her medications and reporting that she had a couple of seizures. Dr. Hunt assessed Collins with foot pain, anxiety disorder, panic attacks and ruled out seizure disorder. He prescribed a number of medications. On February 17, 2005, Collins was assessed with chronic pain and anxiety. She was advised to decrease her use of Xanax and Lortab.[41]

Dr. Hunt saw Collins on March 9, 2005. He assessed her with anxiety disorder and fibromyalgia and prescribed Xanax and Lortab. He noted that Collins had pain in her back and foot.[42]

On February 9, 2006, Collins went to WRRH seeking medication for seizures. At that time, Dr. Hunt assessed Collins with fibromyalgia.[43] On February 9, 2006, Dr. Hunt wrote that Collins had severe fibromyalgia and cannot sit or stand for prolonged periods of time.[44]

At the hearing, Collins complained that she has pain in her foot that radiates up to her back.[45] She states that she hurts all the time, even when she is sitting or lying down.[46]

---

[40]Tr. 179.

[41]Tr. 206.

[42]Tr. 205.

[43]Tr. 207.

[44]Tr. 204.

[45]Tr. 232.

[46]Tr. 232.

She takes Xanax and Vicodin.[47]  Prescription medicine helps relieve the pain some, but not completely.  Collins stated that she is unable to sit more than ten minutes before the pain interferes with her concentration on the task at hand.[48]  The medication makes her tired.[49]

Collins also stated that she suffers from seizures which occur once or twice a week. Collins was prescribed Dilantin, but it made her sick.  She is not on any medication now for her seizures.[50]

The VE testified that the Collins's previous work in quality control is semi-skilled, and is performed in the national economy at the light exertional level.[51]

### III. ALJ's Decision

The ALJ undertook the familiar five-step analysis in determining whether Collins was disabled.[52]  The ALJ found that Collins has not engaged in substantial gainful activity since the alleged onset date of September 30, 2000.[53]

---

[47]Tr. 229.

[48]Tr. 233-234.

[49]Tr.  237.

[50]Tr. 235-236.

[51]Tr. 245-247.

[52]The five-step sequential evaluation is as follows:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because  the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work.  20 C.F.R. §§ 416.920, 404.1520.  See *Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003).

[53]Tr. 15.

The ALJ found that Collins had plantar fasciitis and left tarsal tunnel syndrome, which are severe, but that she does not have an imparment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.[54]

The ALJ found that Collins had the residual functional capacity (RFC) to perform the full range of work at the light level of exertion.  The ALJ defined light work activity as requiring sitting for a maximum of six hours in an eight hour work day; walking and standing for no more than two hours in an eight hour work day; and lifting and carrying on an occasional basis objects weighing no more than 20 pounds.[55]  He further found that Collins is able to perform her past relevant work as a quality control inspector as that job is generally performed in the national economy.[56]  Therefore, the ALJ found that Collins is not disabled.[57]

---

[54]Tr. 15-17.  The ALJ cited to 20 C.F.R. §§ 404.1567 and 416.967 for the definition of light work.  Those definitions do not contain any sitting, standing, or walking requirements.  The ALJ appears to have imposed those limitations himself in determining the RFC. The regulations define light work as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567 and 416.967.

[55]Tr. 19.

[56]*Id.*

[57]*Id.*

## IV. Standard of Review

Collins has the burden of proving her disability by establishing a physical or mental impairment lasting at least one year that prevents her from engaging in any substantial gainful activity.[58]

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.[48]

In this case, the Court must determine whether the Commissioner's decision that Collins is not disabled is supported by substantial evidence.

## V. Arguments and Analysis

Collins alleges that the Commissioners's decision is not supported by substantial evidence in the record as a whole. She contends that the ALJ failed to properly assess her other impairments–fibromyalgia, anxiety disorder, and seizure disorder–and the impact they have on her ability to work. She further asserts that the ALJ erred in finding that she retained the RFC to perform the full range of light work.

---

[58] 42 U.S.C. §1382c(a)(3)(A); *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998); *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

[48] *Roberts v. Apfel,* 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

RFC is a medical question and there must be some medical evidence to support that RFC determination. The ALJ "should obtain medical evidence that addresses the claimant's ability to function in the workplace, "and is required to consider at least some supporting evidence from a medical professional." [49]

There is not substantial evidence in the record to support the ALJ's conclusion that Collins can perform light work and therefore return to her past relevant work. All the medical evidence supports Collins's assertions that she experiences pain. Her treating podiatrist, Dr. Rappette, repeatedly stated that Collins was limited to sedentary activity. Dr. Hunt, Collins's treating physician at WRRH, noted that Collins suffered from foot pain and fibromyalgia. She was prescribed pain medication. That her physicians continued to prescribe Vicodin and Lortab indicate that they believed she was suffering from pain.[50]

Even the opinion of the Social Security consulting physician, Dr. Childress, does not establish that Collins can perform light work. At the most, he said that she could not do activities requiring major standing or walking. He also believed she should receive vocational rehabilitation.

Thus, there is absolutely no evidence in the record to support the ALJ's finding that Collins has the RFC to perform the full range of light work. The case, therefore, must be remanded for the ALJ to reconsider the RFC. In doing so, the ALJ should also reevaluate Collins's subjective complaints under the criteria set forth in *Polaski v. Heckler.*[51]

---

[49] *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)(citations and internal quotations omitted).

[50] Vicodin and Lortab are a combination of acetaminophen and hydrocodone (a narcotic) which are used to relieve moderate to moderately severe pain. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601006.html#brand-names

[51] 739 F.2d 1320 (8th Cir. 1984). These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage,

I also agree that the ALJ failed to adequately assess Collins's impairments. He makes much of the fact that Collins did not mention fibromyalgia until after the hearing. Collins cannot be faulted for this failure as she was relying on a physician's diagnosis which was made in February, 2006.

Additionally, the ALJ determined that Collins did not have any seizure disorder, although there is evidence in the record that she was having seizures even after the one episode which led to the emergency room visit. Furthermore, the ALJ completely failed to consider Collins's panic attacks and anxiety disorder, which are mentioned several times in the record.

The ALJ has a duty to develop the record, even when an attorney represents a claimant at the administrative hearing.[52] The ALJ should obtain additional or clarifying information where a crucial issue is undeveloped.[53]

The record is unclear about the existence of the fibromyalgia, anxiety disorder, and seizures, and what impact, if any, they have on Collins's ability to work. Therefore, the case must also be remanded for further development and consideration of Collins's impairments.

## VI.  Conclusion

In sum, I find that the Commissioner's decision that Collins is not disabled is not supported by substantial evidence. The case must be remanded for the ALJ to develop the record regarding Collins's impairments and to properly evaluate whether Collins can return to her past relevant work. Should Collins meet her burden of establishing that she is unable to perform her past relevant work, then the burden will shift to the Commissioner

---

effectiveness and side effects of medication; and (5) functional restrictions.

[52] *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).

[53] *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

to demonstrate that there are jobs in the national economy that she can perform.

THEREFORE, the decision of the Commissioner is REVERSED and the case is REMANDED to the Commissioner with instructions to conduct further proceedings consistent with this Order.  This is a sentence-four remand.

IT IS SO ORDERED this 28th day of September, 2007.


      /s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE